# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

CHRISTINA DeBUSK,

          Plaintiff,

v.

UNITED AIRLINES, INC.,

          Defendant.

Civil Action No. 1:25-cv-00374-CLC-MJD

## DEFENDANT UNITED AIRLINES, INC.'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TRANSFER VENUE

Defendant United Airlines, Inc. ("Defendant" or "United") submits this Motion to Dismiss, or in the Alternative, Transfer Venue, for response to the Complaint for Declaratory Relief and Damages ("Complaint") filed by Plaintiff Christina DeBusk ("Plaintiff" or "DeBusk"). United is not subject to personal jurisdiction in this action, and the Eastern District of Tennessee is an improper venue. Further, even if the Court were to find personal jurisdiction *does* exist for United (it does not) and venue in this Court *is* proper (it is not), the action should be transferred to the Northern District of Illinois, a more convenient and appropriate forum, pursuant to 28 U.S.C. § 1404(a).

As detailed in United's Memorandum of Law in Support of this Motion, submitted herewith, United is an American airline headquartered in Chicago, Illinois (in the Northern District of Illinois), and incorporated in Delaware. United does not maintain any hub in Tennessee. Plaintiff worked for United for over two decades in a variety of roles across at least six different states. When the Detroit brick-and-mortar location at which Plaintiff was working closed in 2016, she and other employees were permitted to work remotely. Plaintiff chose to move to and work

1

remotely from a farm in Decatur, Tennessee (in the Eastern District of Tennessee). Roughly five years later, her employment was terminated.

Plaintiff is suing United for its application of a COVID-19 vaccine policy and Reasonable Accommodation Process ("RAP"), both developed and administered from its headquarters in the Northern District of Illinois. All of the alleged decisions relevant to Plaintiff's claims occurred in the Northern District of Illinois. Plaintiff even filed her EEOC Charge in Illinois. As detailed in United's Memorandum, Plaintiff's unilateral choice to work remotely from Tennessee at the time of her termination neither confers specific personal jurisdiction over United for her claims nor provides a sufficient basis for venue in this Court.

Further, even if jurisdiction and venue *were* proper in this Court – which they are not – the Northern District of Illinois is a more appropriate venue because, among other things, that is where the bulk of witnesses and evidence are found, where United resides, and where the events at issue took place. Indeed, as set out in United's Memorandum, many United COVID-19 vaccination cases like this one have already been transferred to and heard in the Northern District of Illinois – including *Panaro et al. v. United Airlines, Inc.*, which this Court ordered be transferred from the Eastern District of Tennessee to the Northern District of Illinois based on extremely similar facts. No. 4:23-CV-45, 2024 WL 4291495, at *4 (E.D. Tenn. Sept. 25, 2024) (Collier, J.).

Pursuant to the Court's Order Governing Motions to Dismiss (Doc. 8), United's counsel conferred with Plaintiff's counsel on January 26, 2026, advising that this Court lacks personal jurisdiction over United and that the Eastern District of Tennessee is an improper venue for this action, and inquiring whether Plaintiff would withdraw and refile her Complaint in the Northern District of Illinois to avoid the need for this Motion. Plaintiff's counsel disagreed that there are

jurisdiction or venue-related defects in Plaintiff's Complaint and indicated Plaintiff would oppose United's motion in due course. As such, United submits this Motion.

WHEREFORE, United respectfully requests that the Court dismiss with prejudice Plaintiff's Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). Alternatively, United requests that the Court transfer this matter to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). United further requests any other relief the Court deems just and proper.

Dated: February 3, 2026

/s/ Jacob S. Gibson
_____
Jacob S. Gibson, TN BPR No. 035145
jsgibson@littler.com
Aaron E. Pannell, TN BPR No. 036147
apannell@littler.com

LITTLER MENDELSON, P.C.
3424 Peachtree Road N.E., Suite 1200
Atlanta, GA 30326
Telephone:    404.233.0330
Facsimile:    404.233.2361
*Attorneys for Defendant United Airlines, Inc.*

## CERTIFICATE OF CONSULTATION

Pursuant to the Court's Order Governing Motions to Dismiss (Doc. 8), counsel for Defendant consulted with counsel for Plaintiff by email on January 26, 2026, regarding the foregoing anticipated motion pursuant to Federal Rule of Civil Procedure 12(b) and to determine whether the defects giving rise to this Motion could be cured. Plaintiff denies such defects exist, declines to withdraw and refile her Complaint in the Northern District of Illinois, and her counsel indicated she would oppose Defendant's Motion in due course.

*/s/ Jacob S. Gibson*
Jacob S. Gibson
Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2026, I electronically filed the foregoing using the Court's ECF system, which will automatically generate notice to counsel of record for all other parties to the action as follows:

Mathew D. Staver
Horatio G. Mihet
Daniel J. Schmid
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL  32854
court@lc.org
hmihet@lc.org
dschmid@lc.org

*Attorneys for Plaintiff*

/s/ Jacob S. Gibson
Jacob S. Gibson
Attorney for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

| | |
|---|---|
| CHRISTINA DeBUSK,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>    Defendant. | Civil Action No. 1:25-cv-00374-CLC-MJD |

## DEFENDANT UNITED AIRLINES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE, TRANSFER VENUE

Defendant United Airlines, Inc. ("United" or "Defendant") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Complaint filed by Plaintiff Christina DeBusk ("DeBusk" or "Plaintiff"), or in the alternative, to transfer venue, pursuant to Fed. R. Civ. P. 12(b)(2)–(3), and 28 U.S.C. §§ 1404(a) and 1406. United further relies on the Declaration of Kirk Limacher (hereafter, "Limacher Decl."), attached hereto as **Exhibit A**.

## I. INTRODUCTION

This case belongs in Illinois. That is the situs of the alleged actions underlying Plaintiff's claims, where most anticipated fact witnesses reside, and where the bulk of relevant documentary evidence is maintained. United is not even subject to personal jurisdiction in Tennessee for this dispute. Indeed, the *only* thing connecting this dispute to *this* District is that for the last few years of her employment at United, Plaintiff was permitted to work remotely, and she unilaterally chose to do so from a farm in Decatur, Meigs County, Tennessee. That is not enough to confer personal jurisdiction or venue in this District.

After filing her EEOC Charge in *Illinois*, Plaintiff filed suit in this Court on December 16, 2025. (Doc. 1, Complaint ("Compl.")). She asserts claims of religious discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), based on United's application of its COVID-19 vaccination policy and its Reasonable Accommodation Process ("RAP"), both developed and administered from United's Chicago, Illinois headquarters.

United, a Delaware corporation, is a major American airline that principally manages its route network from its headquarters in Chicago, Illinois, in the Northern District of Illinois. United has no hubs in Tennessee. Plaintiff worked for United for over two decades in a variety of roles across at least six different states. When the Detroit brick-and-mortar location at which Plaintiff worked went remote in 2016, Plaintiff chose to move to and work remotely from a farm in Decatur, Tennessee, in the Eastern District of Tennessee.

This case has no meaningful connection to the Eastern District of Tennessee. United resides and is headquartered in Illinois, and all alleged decisions and actions giving rise to Plaintiff's claims occurred in the Northern District of Illinois, including how the COVID-19 vaccination policy and RAP were applied to Plaintiff's circumstances. Plaintiff even filed her Charge in Illinois. Her unilateral decision to spend her last few years at United working remotely from Decatur, Tennessee, is insufficient to establish jurisdiction or venue.

As such, the Court should dismiss this action for lack of personal jurisdiction and improper venue. In the alternative, this action should be transferred to the Northern District of Illinois under 28 U.S.C. § 1404(a) – *forum non conveniens*. The bulk of known evidence, including fact witnesses and documentary repositories, are located in the Northern District of Illinois. In contrast, Plaintiff has not identified a single person in Tennessee with relevant knowledge apart from herself.

2

Further, a critical mass of cases challenging United's COVID-19 vaccination policies and procedures have already been litigated in the Northern District of Illinois, and many of them were transferred there based on the same connections to Chicago present here.[1] In fact, this Court ordered that the case of *Panaro et al. v. United Airlines, Inc.* be transferred from the Eastern District of Tennessee to the Northern District of Illinois based on extremely similar facts. *Panaro v. United Airlines, Inc.*, No. 4:23-CV-45, 2024 WL 4291495, at *4 (E.D. Tenn. Sept. 25, 2024) (Collier, J.) (transferring COVID-19 vaccination case against United to Northern District of Illinois under § 1404(a)). The same result is appropriate here.

Accordingly, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint or transfer this action to the United States District Court for the Northern District of Illinois.

---

[1] *See Christmon v. United Airlines, Inc.*, No. 1:25-cv-15211 (N.D. Ill. filed Dec. 15, 2025); *Graham v. United Airlines, Inc.*, No. 1:25-cv-15141 (N.D. Ill. filed Dec. 12, 2025); *Reinauer v. United Airlines, Inc., Reinauer v. United Airlines, Inc.*, No. 8:24-cv-02358, Dkt. 34 (M.D. Fla. Nov. 19, 2025) (Order granting Motion to Transfer Venue to Northern District of Illinois) (currently pending in the Northern District of Illinois as 1:25-cv-14132); *Panaro v. United Airlines, Inc.*, No. 4:23-CV-45, 2024 WL 4291495 (E.D. Tenn. Sept. 25, 2024) (transferring matter to Northern District of Illinois); *Wickstrom, et al. v. Air Line Pilots Ass'n, Int'l*, No. 22-cv-00315, 2023 WL 3103836, at *5 (W.D. Tex. April 25, 2023) (transferring the case to the Northern District of Illinois); *Oka v. United Airlines, Inc.*, 2:23-cv-135-DLB-CJS, Dkt. 22 (E.D. Kent. 2023) (Order Granting Joint Motion to Transfer); *Hassett v. United Airlines, Inc.*, No. 23-cv-0960-P, at Dkt. 34 (W.D. Tex. Oct. 5, 2023) (transferring the case to the Northern District of Illinois); *McCladdle El v. United Airlines, Inc.*, Case No. 1:24-cv-04385 at *1 (N.D. Oh. May 8, 2024) (granting motion to transfer to Northern District of Illinois); *Anderson v. United Airlines, Inc.*, No. 23-C-989, 2023 WL 5721594 (N.D. Ill. Sep. 5, 2023); *Ellis v. United Airlines, Inc.*, No. 23-cv-123, Dkts. 30, 36 (N.D. Ill. Oct. 18, 2023) (dismissing the case and entering judgment in favor of United); *Caraffa v. United Airlines, Inc.*, No. 1:23-cv-01800-DAR, Dkt. 11 (N.D. Ohio Feb. 9, 2024) (Transfer of Title VII and state law COVID vaccine-related claims).

## II. FACTUAL BACKGROUND[2]

### A. Plaintiff's Employment

Plaintiff joined United in 1995. (Compl., ¶¶ 2, 15, and 17). For roughly 20 years, Plaintiff worked for United in various roles and locations *outside of Tennessee*, including: Sterling, Virginia; Washington, D.C.; Newark, New Jersey; Providence, Rhode Island; Chicago, Illinois; Pittsburgh, Pennsylvania; and Detroit, Michigan. (*Id.*, ¶¶ 17-24). It was only in the last five or so years of her employment at United that Plaintiff was permitted to work remotely, and she chose to do so from Tennessee. (Limacher Decl., ¶ 14).

Specifically, in 2011, Plaintiff was promoted to Contact Center Supervisor at United's Detroit, Michigan Call Center. (Compl., ¶ 23). In or around March 2016, United closed the Detroit Call Center as a brick-and-mortar office, and all employees located there (including Plaintiff) were offered the opportunity to work remotely for United. (*Id.*, ¶ 24; Limacher Decl. ¶ 14). Notably though, while the Detroit Call Center was closed as a brick-and-mortar office in 2016, those newly-remote employees (including Plaintiff) were still considered to be operationally based out of Detroit. (Limacher Decl. ¶ 15). In other words, Plaintiff remained a Detroit-based United employee. (*See id.*).

Plaintiff chose to reside and work remotely from a farm in Decatur, Tennessee. (*Id.*, ¶ 14). Plaintiff was not instructed or encouraged to choose Tennessee, she was never assigned to Tennessee, and United has not operated a hub there. (*Id.*, ¶ 6, 14, 16). Plaintiff admits that, while in Tennessee, she performed her work "by phone and computer" and had no physical contact with coworkers, customers, or the flying public. (Compl., ¶ 54). She further admits that she did not

---

[2] For purposes of this Motion only, Defendant accepts as true the "factual" allegations of the Complaint. Defendant otherwise denies there is any factual or legal basis for Plaintiff's claims.

4

belong to any church in Tennessee, and she identifies no one in Tennessee with any knowledge relevant to her religious discrimination claims. (*Id.*, ¶ 39). Plaintiff worked remotely from her Decatur farm until the termination of her employment on or around November 16, 2021. (*Id.*, ¶¶ 2, 24-25; Limacher Decl., ¶ 15-16).

      **B.**    **<u>Illinois Is the Situs of Facts and Evidence.</u>**

Plaintiff's Complaint is predicated on United's COVID-19 vaccination policy, enacted in August 2021. (Complaint, ¶ 26). Pursuant to that policy and United's RAP, Plaintiff alleges that on August 31, 2021, she sought a "religious accommodation from United's vaccination requirement" based upon her belief that "receiving a vaccine developed or tested using aborted fetal cell lines would make her complicit in abortion, in violation of her religious convictions." (*Id.*, ¶¶ 34-36). Plaintiff claims that United requested that she provide written documentation substantiating her religious belief. (*Id.*, ¶ 37). Plaintiff refused to comply with that request. (*Id.*, ¶ 43). Plaintiff alleges her employment with United was terminated on November 16, 2021, due to her non-compliance with United's vaccination policy. (*Id.*, ¶ 51).

This dispute belongs in the Northern District of Illinois. United was and is headquartered in Illinois and has no corporate offices in Tennessee. (Limacher Decl., ¶¶ 5-6). United's COVID-19 vaccination policy and RAP, on which this case is based, were developed, adopted, and administered by United personnel at United's headquarters and principal place of business in Chicago, Illinois. (*Id.*, ¶¶ 7-8). Likewise, United's Employee Service Center—the location from which accommodations are processed, and other relevant policies are implemented and administered—is in Chicago, Illinois. (*Id.*, ¶ 10). In addition, United's Human Resource Department at the Employee Service Center, with which Plaintiff interacted regarding the RAP, was based in Illinois. (*Id.*, ¶ 9-10).

United made all decisions relevant to Plaintiff's allegations about United's COVID-19 policy and its RAP in Illinois. (*Id.*, ¶ 9). Those employees who participated in Plaintiff's RAP request – including Kathy Adoga, Managing Director for Contact Center Operations, who signed Plaintiff's termination letter – were located in Chicago. (*Id.*, ¶ 17). Likewise, most of the anticipated fact witnesses remain, or are believed to remain, in Illinois at present. (*Id..*, ¶ 17-19). Lastly, United's personnel records are primarily maintained on servers in Illinois, and the records relevant to United's COVID-19 vaccination policies, RAP, and related communications regarding Plaintiff are primarily maintained in Illinois. (*Id.*, ¶ 9-12).

## III.    LAW AND ARGUMENT

### A.    <u>The Court Cannot Exercise Personal Jurisdiction Over United in this Case.</u>

Fed. R. Civ. P. 12(b)(2) provides for dismissal of a complaint for lack of personal jurisdiction. When bringing an action in federal court, the plaintiff bears the burden of establishing that jurisdiction exists, and to survive dismissal, she must allege a *prima facie* case that the court has personal jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991); *Street v. CSX Transportation, Inc.*, No. 1:22-CV-00297-DCLC-SKL, 2023 WL 6150797, at *2 (E.D. Tenn. Sept. 20, 2023). A plaintiff may not rely on her pleadings alone but must, by affidavit or otherwise, set forth specific facts showing the court has jurisdiction. *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019). The district court has discretion to "decide the motion upon the affidavits alone[.]" *Theunissen*, 935 F.2d at 1458. The plaintiff's failure to make this showing of jurisdiction warrants dismissal. *See Maras v. Cohen*, No. 1:21-CV-00317-DCLC, 2022 WL 1481185, at *3 (E.D. Tenn. May 10, 2022) (citing *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 478 (6th Cir. 2003)). Here, Plaintiff has not alleged – and cannot allege – facts establishing that United is subject to personal jurisdiction in this Court for the instant claims.

Tennessee's long-arm statute, Tenn. Code Ann. § 20– 2–214(a)(6), is "coterminous with the limits on personal jurisdiction imposed by the Due Process Clause of the United States Constitution, and thus, the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical." *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005) (quoting *Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 455 (6th Cir. 1993) (internal quotations omitted)). This case does not meet those minimum requirements of Due Process. To be subject to jurisdiction, Due Process requires that a defendant purposefully avail itself of the privilege of acting in the forum state or causing a consequence in the forum state. *Means v. U.S. Conference of Cath. Bishops*, 836 F.3d 643, 649 (6th Cir. 2016). Further, the cause of action must arise from the *defendant's* activities there, not the plaintiff's. *Id*. Finally, the acts of the defendant or consequences caused by the defendant *must* have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Id.* "Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state." *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002). Neither is established here.

### 1. United Is Not Subject to General Personal Jurisdiction.

"A federal court has general jurisdiction when the defendant's contacts with the forum state are substantial and continuous and systematic, so that the state may exercise personal jurisdiction over the defendant even if the action does not relate to the defendant's contacts with the state." *Roman v. Ashcroft*, 340 F.3d 314, 329 (6th Cir. 2003) (quotations omitted). Generally, a corporate defendant is at home in the "corporation's place of incorporation and its principal place of business." *BNSF Ry. v. Tyrrell*, 581 U.S. 402, 404 (2017). As it relates to airlines, courts routinely hold that airlines incorporated and headquartered in other states are not subject to general personal jurisdiction solely because they operate flights to that state. *See Regueiro v. Am. Airlines, Inc*., No.

19-23965-Civ-Martinez-Louis, 2022 WL 2359764, at *4 (S.D. Fla. June 30, 2022) (airline headquartered and incorporated out of state was not subject to general personal jurisdiction in Florida because the state was not a surrogate for a headquarters or state of incorporation and collecting cases showing airlines not subject to general jurisdiction in states based on routine business in those states); *Vallarta v. United Airlines, Inc*., 497 F. Supp. 3d 790, 799 (N.D. Cal. 2020) (United Airlines not subject to general jurisdiction in California despite having two hub airports in the state).

Plaintiff admits that United is a Delaware corporation with its principal place of business in Chicago, Illinois, from where it operates a network of domestic and international flights. (Compl., ¶ 16; Limacher Decl., ¶ 5). Accordingly, United is not "at home" in Tennessee for purposes of Due Process. *See BNSF Ry.,* 581 U.S. at 402*; see also Daimler AG v. Bauman,* 571 U.S. 117, 118 (2014) ("The paradigm all-purpose forums for general jurisdiction are a corporations place of incorporation and principal place of business."). Thus, Defendant may be subject to general jurisdiction in Delaware or Illinois, but not in Tennessee.

### 2. United Is Not Subject to Specific Personal Jurisdiction in This Case.

Plaintiff also cannot establish specific jurisdiction over Defendant in this lawsuit. "Specific jurisdiction turns on the 'affiliation between the forum and the underlying controversy.'" *Parker*, 938 F.3d at 839 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). United's "suit-related conduct" must establish "a substantial connection" with Tennessee, or jurisdiction does not lie here. *See id.* In determining whether a plaintiff has made this showing, courts should not mistake a plaintiff's forum contacts for the defendant's. *Walden v. Fiore*, 571 U.S. 277, 289 (2014).

Here, Plaintiff has not alleged that any "suit-related" conduct *by United* has any connection with Tennessee. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (purposeful

availment may not be based on "unilateral activity of another party or a third person"). Rather, the alleged unlawful conduct at issue is the administration of United's COVID-19 vaccination policy and United's RAP, both developed and administered by personnel in United's Chicago headquarters. (Compl., ¶¶ 3, 26-28, 35-37, and 42-43). Further, those persons known to have participated in Plaintiff's specific accommodation request and her subsequent termination were based in Chicago. (Limacher Decl. ¶ 17). None of this "suit-related" conduct shows any material connection with Tennessee; all of it occurred in Illinois. (*Id.*, ¶¶ 7-10).

The single connection to Tennessee in this case is that Plaintiff unilaterally decided she wanted to live there when United's Detroit brick-and-mortar office went remote. (*Id.*, ¶ 14). Even so, Plaintiff remained a Detroit employee for operational purposes. (*Id.*). But it is not enough that Plaintiff chose to be located in Tennessee at the time United's leadership based in Chicago terminated her employment.

An employee's working remotely in a particular jurisdiction normally does not, without more, create personal jurisdiction over the employer there. For example, the plaintiff in *Carpenter v. S. Airways Express* was a former call center employee for a Delaware-incorporated and Florida-headquartered airline. No. 2:21-CV-568, 2021 WL 5937749, at *2 (S.D. Ohio Dec. 16, 2021). She worked remotely from her home in Ohio. When she sued the airline for employment-based claims, the airline moved for dismissal for lack of jurisdiction. The Southern District of Ohio, analyzing Sixth Circuit and other federal cases, concluded jurisdiction over the airline in Ohio would *not* comport with Due Process. The *Carpenter* court reviewed cases bearing on the question of whether specific personal jurisdiction existed over a nonresident employer of a fully-remote employee. In those cases in which jurisdiction *was* found, it was usually because the employer had recruited the employee to work in that particular jurisdiction or had otherwise encouraged the employee to work

in the jurisdiction. *See Carpenter*, 2021 WL 5937749, at *5 (examining *Cossart v. United Excel Corp.*, 804 F.3d 13, 16 (1st Cir. 2015) (finding that a nonresident employer purposefully availed itself of Massachusetts law where the employer recruited a Massachusetts resident to conduct sales work in Massachusetts with a contract stating that the work would occur in Massachusetts and provided office equipment to use while in Massachusetts) and *Stuart v. Churn LLC*, No. 1:19-CV-369, 2019 WL 2342354, at *5 (M.D.N.C. June 3, 2019) (finding that a nonresident employer purposefully availed itself of North Carolina law where the employer hired a North Carolina resident, reimbursed the employee's remote work-related phone and internet expenses, and expected the employee to expand the business into North Carolina by meeting with distributors there)).

However, as the *Carpenter* court discussed, when a remote employee makes a unilateral decision to work in a particular jurisdiction, that is insufficient to create specific jurisdiction over the out-of-state employer:

> For example, in *Fields v. Sickle Cell Disease Ass'n of Am., Inc.*, the Eastern District of North Carolina classified an employee's remote work, which was by her own decision and at her request, as "a unilateral decision that cannot be fairly attributed to the defendant as an attempt to avail itself of the privileges of conducting business in [the forum state]." 376 F. Supp. 3d 647, 653 (E.D.N.C. 2018), aff'd, 770 F. App'x 77 (4th Cir. 2019). Similarly, the District of Maryland recently held that an employee who conducted much of her work remotely from her Maryland home was engaged in "'unilateral activity' that d[id] not establish purposeful availment," even though the remote work was known to and supported by her employer. *Perry v. Nat'l Ass'n of Home Builders of the U.S.*, No. TDC-20-0454, 2020 WL 5759766, at *5 (D. Md. Sept. 28, 2020). *See also Rosenberg v. Deutsche Bank AG*, No. 11-02200, 2012 WL 3744632, at *5 (D. Colo. May 22, 2012), adopted by No. 11-02200, 2012 WL 3744631 (D. Colo. Aug. 28, 2012) (finding that an employee's unilateral decision to relocate to the forum state did not establish an employer's minimum contacts with the state); *Phillips v. Persons Servs. Corp.*, No. 2:20-cv-2392-MSN-atc, 2021 WL 5277481, at *5 (W.D. Tenn. Mar. 31, 2021) (same); *Sciortino v. CMG Capital Mgmt. Grp., Inc.*, No. 16-11012, 2016 WL 4799099, at *6 (E.D. La. Sept. 14, 2016) (finding that an employer did not have minimum contacts with the forum state simply by hiring an employee who worked mainly from his home in that state).

*Carpenter*, 2021 WL 5937749, at *5.

Based on this weight of case law, the *Carpenter* court concluded that the Delaware-incorporated and Florida-based airline was not subject to personal jurisdiction in Ohio. *Id*. at *6.

The same is true here. Here, Plaintiff was employed in Detroit until 2016, when she and her officemates were permitted to work remotely. Plaintiff unilaterally chose to do so from a farm in Decatur, Tennessee. Plaintiff further admits she performed her work in Tennessee "by phone and computer" and had no physical contact with coworkers, customers, or the flying public. (Compl., ¶ 54). In short, there was no "purposeful availment" in Tennessee by United, and this Court cannot exercise specific jurisdiction over it.

### B.      Plaintiff Filed Her Complaint in the Wrong Venue.

Plaintiff filed her Complaint in the wrong venue, and it should therefore be dismissed or transferred. *See* Fed. R. Civ. P. 12(b)(3); 28 U.S.C. §1406. "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such a case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Plaintiff asserts three causes of action in her Complaint, each under Title VII. (Complaint, Counts 1-3). Title VII contains a special venue provision. *See* 42 U.S.C. § 2000e-5(f)(3). Under that venue provision, venue is proper: (1) "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed," (2) "in the judicial district in which the employment records relevant to such practice are maintained and administered," (3) "or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice," (4) "but if the respondent is not found within any such district, such an

action may be brought within the judicial district in which the respondent has [its] principal office." *Id*.

Venue is not proper in the Eastern District of Tennessee under Title VII's venue provision. First, none of the conduct complained of occurred in Tennessee. United developed all relevant policies (*i.e.*, United's COVID-19 vaccination policy and the RAP), and implemented all decisions related to Plaintiff's claims, at United's principal place of business in Chicago, Illinois. (Limacher Decl., ¶ 7-10). Even Plaintiff's base of operation as a remote employee remained Detroit, Michigan – not Tennessee. (*Id.*, ¶ 15). *See, e.g., Panaro*, 2024 WL 4291495 (Collier, J.) (Ohio-based Flight Attendant and Virigina-based Pilot could not show that a substantial part of events occurred in Tennessee even though both resided in Tennessee, and concluding substantial part of events occurred in Illinois where United maintained its headquarters); *Frees v. United Airlines,* No. 8:08-CV-2370-T-27MAP, 2009 WL 10670572, at *5 (M.D. Fla. May 14, 2009) (Illinois-based flight attendant could not show that substantial part of events occurred in Florida even though she lived in Florida).

Second, the records related to United's implementation of its COVID-19 vaccination policy, implementation of the RAP, and other relevant documents are primarily maintained in the Northern District of Illinois, and *none* are in the Eastern District of Tennessee. (Limacher Decl., ¶¶ 7-12). Likewise, United's personnel records are primarily maintained in the Northern District of Illinois, not the Eastern District of Tennessee. *See Panaro*, 2024 WL 4291495, at *3 (Collier, J.) (finding insufficient ties to Tennessee and that the locus of operative facts and "the center of gravity" of the case was in Illinois where the bulk of documents were maintained at United's headquarters); *see also, Sacklow v. Saks Inc.*, 377 F.Supp.3d 870, 880 (M.D. Tenn. 2019).

Third, Plaintiff was never considered a Tennessee employee by United even though she happened to work remotely there. (Limacher Decl., ¶¶ 14-15). Even after the Detroit Call Center closed as a brick-and-mortar operation, Plaintiff's base of operation as a remote employee continued to be Detroit. (*Id*.). She was never assigned to any territory in Tennessee, and there is nothing to suggest that, had her employment continued past her termination date, her base of operations would have been changed to Tennessee. (*Id*. ¶ 16).

But even if the Court were to find venue exists under any of the foregoing three prongs, the fourth prong of Title VII's venue provision mandates that, where the defendant "is not found within any [] district" that is proper under prongs one, two, or three of the venue provision, the location of the defendant's principal office is where the action should be brought. *See* 42 U.S.C. § 2000e-5(f)(3). Thus, this action *should have* been brought in the Northern District of Illinois where United's principal office is located. Plaintiff readily admits United has no corporate offices in Tennessee and is not incorporated under the laws of Tennessee. (Compl., ¶ 16; *see also* Limacher Decl. ¶ 5). Northern District of Illinois is the proper venue under 42 U.S.C. § 2000e-5(f)(3).

Because this matter is filed in the wrong venue, the Court "<u>shall</u> dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (underline added). Accordingly, Defendant requests that the Court dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a). Alternatively, if Plaintiff is able to articulate some reason justice requires transfer instead of dismissal (United is aware of none), Defendant requests that the Plaintiff's Complaint be transferred to the Northern District of Illinois.

### C. Alternatively, This Action Should Be Transferred to the Northern District of Illinois Under the 28 U.S.C. § 1404(a) *Forum Non Conveniens* Analysis.

Even if personal jurisdiction *did* exist over United in this matter, and even if the Eastern District of Tennessee *were* a permissible venue, this action should nonetheless be transferred to the Northern District of Illinois – a far more appropriate and sensible forum – pursuant to § 1404(a).

"[A] district court may transfer any civil action to any other district or division where it might have been brought" if such transfer would be "[f]or the convenience of parties and witnesses, in the interest of justice[.]" 28 U.S.C. 1404(a). *See, e.g.*, *Mayberry*, 2013 WL 5560318, at *4 (looking to the §1404(a) factors as a guide and granting the motion to transfer venue); *McKevitz v. Cap. All. Grp.*, No. 3:18-CV-00131-HBG, 2019 WL 1318245, at *5–6 (E.D. Tenn. Mar. 22, 2019) (same). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The statute exists "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Panaro*, 2024 WL 4291495, at *1 (Collier, J.) (internal quotations omitted).

Under Section 1404(a), the Court must first determine whether the action could have been brought in the forum to which transfer is requested. *Id.* at *2. Here, this action could have been properly brought in the Northern District of Illinois. *See* 28 U.S.C. § 1391(b). United resides in the Northern District of Illinois. (Compl., ¶ 16; Limacher Decl., ¶¶ 5 and 7). Further, "a substantial part of the events giving rise to Plaintiff's claims occurred in the Northern District of Illinois, as United developed and implemented its COVID-19 vaccination policy at its principal place of business in Chicago, Illinois." *Panaro*, No. 2024 WL 4291495, at *2 (Collier, J.).

14

Next, in determining whether the action *should* have been brought in the Northern District of Illinois, federal courts consider a set of private interest and public interest factors in evaluating a motion to transfer. *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984). No one factor is dispositive. *Donia*, 2008 WL 2323533, at *2. Instead, decisions to transfer venue are within the discretion of the district court. *Hefferan v. Ethicon Endo- Surgery Inc.*, 828 F.3d 488, 493 (6th Cir. 2016). This Court has exercised that discretion in very similar cases as here, where the private and public interests favor an alternative forum. *See, e.g.*, *Panaro*, 2024 WL 4291495, at *4 (Collier, J.) (transferring United COVID-19 vaccination case to Northern District of Illinois, concluding private and public interest factors favored transfer).

Here, Plaintiffs cannot overcome the fact that, even if the Eastern District of Tennessee were a proper venue—which it is not—the transfer analysis factors clearly favor transfer to the Northern District of Illinois. That is, each factor either favors transfer to Illinois or is neutral.

### 1.    Private Interest Factors Weigh in Favor of Transfer.

Courts consider private interest factors like (1) the plaintiff's choice of forum; (2) the convenience of the witnesses; (3) where the parties reside; (4) the "location of willing and unwilling witnesses[;]" (5) the location of evidence; and (6) the locus of events that "gave rise to the dispute." *Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 877 (M.D. Tenn. 2019); *see also Dowling*, 727 F.2d at 612. Here, the weight of these private interest factors tips decidedly in favor of transfer.

As an initial matter, while a plaintiff's choice of venue is sometimes accorded deference in a § 1404 analysis, that is not the case where – as here – none of the conduct about which Plaintiff complains occurred in Plaintiff's chosen forum. *See Panaro*, 2024 WL 4291495, at *2 (Collier, J.) (transferring case, finding plaintiffs' chosen forum given less deference because none of the conduct complained of occurred in Tennessee); *Mayberry*, 2013 WL 5560318, at *2, 4; *see also Shaibi v. Louisville & Ind. R.R. Co.*, Civil Action No. 3:19-CV-00928-GNS, 2020 WL 1539936 at

*6 (W.D. Ky. Mar. 31, 2020) (plaintiff's decision to bring suit in Kentucky accorded less deference in the § 1404(a) analysis); *Adams v. Honda Motor Company, Ltd*., No. 3:05CV-120-S, 2005 WL 3236780 at *2 (W.D. Ky. Nov. 21, 2005) (transferring case where relevant events occurred in desired transfer forum, other fact witnesses (besides plaintiff) resided in transfer state, and majority of evidence maintained in transfer forum, noting: "There is little beyond [the] choice of forum to recommend that the case remain in this jurisdiction.").

A plaintiff's residence in a particular forum is not, by itself, enough to establish the kind of connection needed for such deference. *See KANL, LLC v. Savage Sports Corp.*, No. 3:13-CV-265-TAV-CCS, 2014 WL 1745443, at *4 (E.D. Tenn. Apr. 30, 2014) (absent other strong connections, plaintiff's residence in the forum state, alone, is insufficient); *Am. Gen. Life Ins. Co. v. Brooks-Hayzlett*, No. 1:21-CV-00045-GNS, 2021 WL 3711198 at *3 (W.D. Ky. Aug. 20, 2021) (plaintiff's residence in state found not sufficient to confer venue). Here, there is zero connection between this District and any of the events giving rise to this lawsuit, apart from Plaintiff's remote location, that might create any degree of deference to Plaintiff's choice.

Next is the relative convenience to the witnesses. This factor is often considered the most important factor in ruling on a Section 1404(a) transfer motion. *Combs v. Bridgestone Americas, Inc*., No. 3:22-CV-00346-GNS-CHL, 2022 WL 10662398, at *2 (W.D. Ky. Oct. 18, 2022). Here, that factor weighs decisively in favor of transferring this action to the Northern District of Illinois. Where, as here, witnesses are required to travel great distances, including to another state, the factor more strongly favors the location of the witnesses. *Kay v. Nat'l City Mortg. Co*., 494 F. Supp. 2d 845, 852 (S.D. Ohio 2007). In addition, courts have held that, "[w]hen the distance traveled is beyond 100 miles, inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Mid-Continent Cas. Co. v. Petroleum Sols*., 629 F. Supp. 2d

759, 762 (S.D. Tex. 2009) (citing *In re Volkswagen*, 371 F.3d 201, 204-05 (5th Cir. 2004)). In essence, the "100-mile rule" evinces that (with differing degrees) transfer is favored if the transferee venue is a shorter average distance away from witnesses than the transferor venue. *In re TS Tech*, 551 F.3d 1315, 1320 (Fed. Cir. 2008).

United's headquarters are in Chicago, and that is where the bulk of anticipated fact witnesses are located. For example, the employees known to have been involved in Plaintiff's RAP request – including Jasmine Love, Kirk Limacher, and Kathy Adoga – each were based in Illinois at the time of Plaintiff's termination. (Limacher Decl. ¶ 17). Mr. Limacher remains in Illinois to date, and Ms. Love is believed to remain in Illinois to date. (Limacher Decl. 18-19). Further, those persons with knowledge of United's development and implementation of its COVID-19 vaccination and RAP are likely found at or near United's Chicago headquarters, where those programs were developed and leadership was and is based. (Limacher Decl. ¶¶ 7-10). For these Illinois witnesses, traveling roughly 500 miles by air or 600 miles by car to Chattanooga, Tennessee, will cause greater inconvenience and disruption to their lives and the business than if this matter was litigated in the Northern District of Illinois.

In contrast, United is only aware of one witness in Tennessee – Plaintiff. *See Panaro*, 2024 WL 4291495, at *3 (Collier, J.) (granting transfer where plaintiff was only witness in Tennessee). Plaintiff has not identified any other witnesses in the Eastern District of Tennessee, and even as to the central issue of her religious belief, she admits she is not a member of any church in Tennessee, and there is no one in Tennessee capable of speaking knowledgeably to that issue. (Compl., ¶ 39). Further, Plaintiff is represented by Florida-based counsel who has filed cases against United like this one across the country, including in Florida and Colorado. Surely, Plaintiff and her counsel will not be markedly inconvenienced by this action's transfer to the location of most if not all other

known witnesses. The factor of convenience of witnesses therefore plainly favors transfer to the Northern District of Illinois. *See Panaro*, 2024 WL 4291495, at *3 (Collier, J.) (finding convenience of witnesses factor favors transfer where employment decisions made in Northern District of Illinois, most of the witnesses located there, and only one witness, Plaintiff, was found in Eastern District of Tennessee).

Also favoring transfer to the Northern District of Illinois is the ease of access to sources of proof, in that the documentary evidence related to this action is primarily located in Illinois. *See Panaro*, 2024 WL 4291495, at *4 (Collier, J.) (transferring case from Tennessee to Illinois because the events took place there, and the evidence and the majority of witnesses reside there). "[A]lmost invariably, this factor will turn upon which party will most probably have the greater volume of documents relevant to the litigation and their presumed physical location in relation to the transferee and transferor venues." *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 767 (E.D. Tex. 2009) (citing *In re Volkswagen II*, 545 F.3d at 314-315) (analyzing the volume and location of parties' documentary evidence). United anticipates that the bulk of the relevant documents in this matter, including communications about Plaintiffs' accommodation request and approval and documents regarding United's vaccine policy and RAP, are in the possession of Defendant in Illinois. (Limacher Decl., ¶¶ 7-12). This factor therefore supports transfer to the Northern District of Illinois.

Lastly, the locus of events giving rise to this suit took place in the Northern District of Illinois. That is, the administration of United's COVID-19 vaccination policy and its RAP, and the specific decisions about which Plaintiff complains, occurred in the Northern District of Illinois. This factor plainly favors transfer to the Northern District of Illinois.

## 2. Public Interest Factors Weigh in Favor of Transfer.

Public-interest factors include "administrative difficulties of courts with congested dockets; the burden of jury duty on people of a community having no connection with the litigation; desirability of holding a trial near those most affected by it ("There is a local interest in having localized controversies decided at home."); appropriateness of holding a trial in a diversity case in a court which is familiar with governing law." *Dowling*, 727 F.2d at 612. In this case, these factors compel transfer.

Favoring the Northern District of Illinois over the Eastern District of Tennessee is the interest "in having localized interests decided at home." This factor is among the most critical of the public interest factors and favors the location that has an interest where the controversy primarily extends. Transfer is proper to avoid burdening a disinterested jury with deciding the merits of a case unrelated to the jury pool. *Hefferan*, 828 F.3d at 500 (noting that the public interest factors include "the unfairness of burdening citizens in an unrelated forum with jury duty."); *see Combs*, 2022 WL 10662398, at *3 ("Transfer may be proper where it would avoid burdening members of a community unrelated to the litigation with jury duty.") (internal citation and punctuation omitted); *North v. McNamara*, 47 F. Supp. 3d 635, 647 (S.D. Ohio 2014) (transferring out of Ohio despite one defendant's residence therein). The Northern District of Illinois will have a significant interest in adjudicating cases involving United since United is based in Illinois. By contrast, there is no local interest in this matter on the part of either the Eastern District of Tennessee or the citizens of this district who will be called upon to decide this matter. Thus, keeping the case in Tennessee would unfairly burden citizens in an unrelated forum with jury duty. *See Combs*, 2022 WL 10662398, at *3; *In re Volkwagen*, 371 F.3d at 206 ("[j]ury duty is a burden that ought not to be imposed upon the people of a community" lacking an appropriate connection

to the litigation.). United is not based in Tennessee, and none of the alleged acts took place in this district.

Next, United acknowledges that this Court and the United States District Court for the Northern District of Illinois are both perfectly capable of presiding over this Title VII lawsuit. However, this Court's interest in judicial economy and minimizing the cost and burden of litigation compels transfer the Northern District of Illinois, which has already heard many cases much like this one. In *Panaro*, this Court transferred a United COVID-19 vaccination case to the Northern District of Illinois, acknowledging that judicial economy favors hearing similar United COVID-19 vaccine cases in the same district: "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different [d]istrict [c]ourts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Panaro*, 2024 WL 4291495, at *3 (quoting *Continental Grain Co. v. The-FBL-585*, 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)).

This Court noted that numerous cases like this one challenging United's COVID-19 vaccination policies and RAP are pending in the Northern District of Illinois, are already resolved by the Northern District of Illinois, and/or awaiting ruling on motions to transfer to the Northern District of Illinois. For example, in *Anderson et al. v. United Airlines, Inc. et al.*, thirty United employees individually asserted Title VII religious accommodation claims against United as part of a non-class collective action. The employees alleged they "all submitted, or attempted to submit requests for religious accommodations that would have allowed them to continue working at United without receiving coronavirus vaccinations." No. 1:23-cv-00989, 2024 WL 1555496 (N.D. Ill. April 10, 2024)*. Two other similar United COVID-19 vaccination policy cases, *Hassett* and *Wickstrom*, were transferred to Illinois upon findings that, *inter alia*, the relative access to

evidence, court congestion, and local interests weighed in favor of transfer. *See Hassett v. United Airlines, Inc.*, No. 23-cv-00270-PHX-ROS, 2023 WL 6066739 (D. Ariz. Sept. 18, 2023); *Wickstrom v. Air Line Pilots Ass'n, Int'l*, No. EP-22-cv-00315-DB, 2023 WL 3103836 (W.D. Tex. April 25, 2023).

A fourth case, *Engstrom v. Air Line Pilots Assn. Int'l*, involves federal claims and Florida statutory and common law claims related to United's RAP and the Company's decision to place the plaintiffs on unpaid leave as an accommodation. No. 1:23-cv-15792 (N.D. Ill. filed Nov. 16, 2022). The *Engstrom* case was transferred to the Northern District of Illinois upon findings that several of the disputed decisions were made there, relevant records were maintained there, and the transfer would promote the just and efficient resolution of the matter. *See id*.

Then, between 2023 and 2025, another nine cases making similar challenges against United were either filed in or transferred to the Northern District of Illinois. *See Christmon v. United Airlines, Inc.*, No. 1:25-cv-15211 (N.D. Ill. filed Dec. 15, 2025); *Graham v. United Airlines, Inc.*, No. 1:25-cv-15141 (N.D. Ill. filed Dec. 12, 2025); *Reinauer v. United Airlines, Inc.*, No. 8:24-cv-02358, Dkt. 34 (M.D. Fla. Nov. 19, 2025) (Order granting Motion to Transfer Venue to Northern District of Illinois) (currently pending in the Northern District of Illinois as 1:25-cv-14132); *Panaro v. United Airlines, Inc.*, No. 4:23-CV-45, 2024 WL 4291495 (E.D. Tenn. Sept. 25, 2024) (Collier, J.) (transferring case to Northern District of Illinois); *Wickstrom, et al. v. Air Line Pilots Ass'n, Int'l*, No. 22-cv-00315, 2023 WL 3103836, at *5 (W.D. Tex. April 25, 2023) (transferring the case to the Northern District of Illinois); *Oka v. United Airlines, Inc.*, 2:23-cv-135-DLB-CJS, Dkt. 22 (E.D. Kent. 2023) (Order Granting Joint Motion to Transfer); *Hassett v. United Airlines, Inc.*, No. 23-cv-0960-P, at Dkt. 34 (W.D. Tex. Oct. 5, 2023) (transferring the case to the Northern District of Illinois); *McCladdle El v. United Airlines, Inc.*, Case No. 1:24-cv-04385 at *1 (N.D.

Oh. May 8, 2024) (granting motion to transfer to Northern District of Illinois); *Anderson v. United Airlines, Inc.*, No. 23-C-989, 2023 WL 5721594 (N.D. Ill. Sep. 5, 2023); *Ellis v. United Airlines, Inc.*, No. 23-cv-123, Dkts. 30, 36 (N.D. Ill. Oct. 18, 2023) (dismissing the case and entering judgment in favor of United); *Caraffa v. United Airlines, Inc*., No. 1:23-cv-01800-DAR, Dkt. 11 (N.D. Ohio Feb. 9, 2024) (Transfer of Title VII and state law COVID vaccine-related claims).

In circumstances such as this with similar cases and overlapping legal issues, it is well-settled that transfer under 28 U.S.C. §1404 is appropriate to avoid duplication of effort and reduce the burden on the courts. See *Continental Grain Co*, 364 U.S. at 20-21 (transferring case under 28 U.S.C. § 1404(a) so that two lawsuits arising from single occurrence would be heard in same venue to be "in the interest of justice"). Indeed, the Court must also consider "those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" *Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365, 370 (6th Cir. 2008). If this case is not transferred, it will not only result in costly and wasteful duplicative litigation, but it imposes a substantial risk of inconsistent rulings with the other cases that are consolidated before the courts in the Northern District of Illinois. *See Panaro*, 2024 WL 4291495, at *3-4 (Collier, J.) ("Transfer will enable 'the efficient administration of the court system' by avoiding duplicative and inconsistent rulings.).

For these reasons, in *Panaro*, this Court concluded that the interests of justice would be served by transferring the plaintiffs' United COVID-19 vaccination case from the Eastern District of Tennessee to the Northern District of Illinois:

> The general "interests of justice" and the practical problems of trying the case most expeditiously and inexpensively substantially weigh in favor of transfer. Considering there are many cases pending in the Northern District of Illinois which involve precisely the same issues here, denying the transfer of venue would lead to the "wastefulness of time, energy and money that § 1404(a) was designed to

prevent." Transfer will enable "the efficient administration of the court system" by avoiding duplicative and inconsistent rulings.

*Panaro*, 2024 WL 4291495, at *4 (Collier, J.) (internal citations omitted). The same result is appropriate here.

## IV. CONCLUSION

For the foregoing reasons, United respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice for lack of personal jurisdiction and improper venue. Alternatively, United requests that the Court transfer this matter to the Northern District of Illinois. Defendant further requests any other relief the Court deems just and proper.

Dated: February 3, 2026

/s/ Jacob S. Gibson
Jacob S. Gibson, TN BPR No. 035145
jsgibson@littler.com
Aaron E. Pannell, TN BPR No. 036147
apannell@littler.com

LITTLER MENDELSON, P.C.
3424 Peachtree Road N.E., Suite 1200
Atlanta, GA 30326
Telephone:     404.233.0330
Facsimile:      404.233.2361

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2026, I electronically filed the foregoing using the

Court's ECF system, which will automatically generate notice to counsel of record for all other

parties to the action as follows:

Mathew D. Staver
Horatio G. Mihet
Daniel J. Schmid
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
court@lc.org
hmihet@lc.org
dschmid@lc.org

*Attorneys for Plaintiff*


/s/ *Jacob S. Gibson*
Jacob S. Gibson
Attorney for Defendant

# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

CHRISTINA DeBUSK,

               Plaintiff,

v.

UNITED AIRLINES, INC.,

               Defendant.

Civil Action No. 1:25-cv-00374-CLC-MJD

## DECLARATION OF KIRK LIMACHER

I, Kirk Limacher, hereby declare and state as follows:

1.     I am over the age of 21 and am competent to testify to the statements set forth herein.

2.     I currently serve as the Senior Vice President of Technical Operations Planning and Strategy for United Airlines, Inc. ("United"). I am based in Chicago, Illinois. I previously served as the Vice President of Human Resource Services for United from November 2016 to December 2022. In my role as Vice President of Human Resource Services, I was responsible for the employee service center, human resources technology, global learning, pilot hiring and other administrative functions. As a result, I am familiar with: (1) the creation and evolution of United's vaccination policy; (2) the process by which employees requested exemptions from United's vaccination policy; (3) accommodations offered to employees who received an exemption from United's vaccination policy; and (4) the decision-making process surrounding the foregoing topics; among other topics.

3. I submit this Declaration in support of United's Motion to Dismiss, or in the Alternative, Transfer. The facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided by individuals working with me or under my supervision, or my opinion based on my experience, knowledge, and information regarding matters related to United and its policies.

4. I have reviewed Plaintiff Christina DeBusk's ("Plaintiff" or "DeBusk") Complaint in the above-captioned case and am familiar with the subject matter it references.

5. United is a commercial airline that operates domestic and international flights. United is a Delaware corporation with a principal place of business in Chicago, Illinois.

6. United maintains hubs in the following locations, none of which are in Tennessee: Chicago, IL—O'Hare International Airport (ORD); Denver, CO—Denver International Airport (DEN); Guam—Antonio B. Won Pat International Airport (GUM); Houston, TX—Houston/George Bush Intercontinental Airport (IAH); Los Angeles, CA—Los Angeles International Airport (LAX); New York, NY/Newark, NJ—Newark Liberty International Airport (EWR); San Francisco, CA—San Francisco International Airport (SFO); Washington, D.C.—Washington Dulles International Airport (IAD).

7. Chicago, Illinois is both the situs of United's corporate headquarters and the location from which United's senior leadership team runs the company's worldwide operations.

8. United's COVID-19 policies and procedures, its Reasonable Accommodation Process ("RAP"), were developed, adopted, and implemented in Illinois.

9. United made all decisions relevant to Plaintiff's allegations about United's COVID-19 policy and its RAP in Illinois. The relevant documentation for such decisions is maintained in Illinois.

2

10.     United's Employee Service Center is located in Chicago, Illinois. The Employee Service Center is the location from which accommodations are processed, and other relevant policies are implemented and administered.

11.     United's personnel records are primarily maintained on servers based in Arlington Heights, Illinois, near Chicago, Illinois and within the Northern District of Illinois.

12.     Most, if not all, documentation related to Ms. DeBusk's claims is in United's possession in Chicago, Illinois. At minimum, none of the relevant documentary evidence is located in Tennessee.

13.     Plaintiff began working at United in or around June 1995. In the course of her employment at United, she resided in at least six different states: Virginia, New Jersey, Illinois, Pennsylvania, Michigan, and lastly, Tennessee.

14.     The most recent brick-and-mortar office at which Plaintiff worked for United, United's Detroit office, was closed in or around March 2016. All employees located in the Detroit office, including Plaintiff, were offered the opportunity to work remotely for United. Plaintiff chose to move to and work remotely from Tennessee. Upon information and belief, Plaintiff was neither directed nor encouraged to move to or work remotely from Tennessee.

15.     While the Detroit contact center was closed as a brick-and-mortar office in or around 2016, Plaintiff and others were still considered to be based out of Detroit, as a remote location, for operational purposes.

16.     From 2016 through her 2021 termination, Plaintiff's role was not territory-specific; she was not assigned to Tennessee or any other region.

17.     The following United employees were involved in Plaintiff's RAP request: Jasmine Love, Kirk Limacher, and Kathy Adoga. All three employees were based in Illinois at the time of Plaintiff's 2021 RAP request and termination.

18.     Kirk Limacher remains in Illinois to date.

19.     Jasmine Love is no longer employed by United, but her last known address is in St. Charles, Illinois, around 45 miles outside of Chicago.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this ___2___ day of ___February___, 2026.

_____
Kirk Limacher